```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
```

**IN THE MATTER OF SOUTH LOUISIANA ETHANOL, LLC**
**& SOUTH LOUISIANA ETHANOL, LLC**

**VERSUS**                                               **NO. 12-0854**

**WHITNEY NATIONAL BANK, ET AL.**                        **SECTION "B"**


                         <u>ORDER AND REASONS</u>

   Before the Court is Appellant ENGlobal's Motion to Re-Instate Appeal from a decision of the United States Bankruptcy Court for the Eastern District of Louisiana Adversary Case No. 09-1119 (Adv. R. Docs. 629 and 630). (13-04693, Rec. Doc. No. 1). Appellee Industrial Process Technology, Inc. (IPT) filed a response brief. (Rec. Doc. No. 42). Appellant filed a reply brief thereto. (Rec. Doc. No. 43).

   Appellant, ENGlobal, has submitted the following Statement of Issues on Appeal from the Amended Order of the Bankruptcy Court entered on April 26, 2013. (09-1119, Adv. R. Docs. 629):

   (1) Whether the Bankruptcy Court erred in finding post-January 25, 2007 change orders to the pre-January 25, 2007 contracts between IPT and J&C Welding & Fabrication (J&C) to be contracts independent and separate from the pre-January 25, 2007 contracts. (13-04693, Rec. Doc. No. 1-2, at 3).

   (2) Whether the Bankruptcy Court erred in denying ENGlobal's Motion to Strike IPT's Motion of Summary Judgment (09-1119, Adv. R. Doc. 528) based on the Bankruptcy Court's Order (09-1119, Adv. R.

Doc. 537, amended by Adv. R. Doc. 629) which invalidates (in part) IPT's PWA lien. (*Id.*).

Accordingly, and for the reasons articulated below,

**IT IS ORDERED** that ENGlobal's Motion to Reinstate Appeal (Rec. Doc. No. 29) is **GRANTED**.

**IT IS FURTHER ORDERED** that the judgment of the Bankruptcy Court is **REVERSED** and the matter is **REMANDED** to the Bankruptcy Court for further proceedings consistent with this opinion.[1]

**Cause of Action and Facts of the Case:**

I. Facts

This case arose out of an agreement between IPT and J&C that dealt with IPT performing work on the renovation and restoration of a plant owned by South Louisiana Ehtanol, LLC. (SLE). (Rec. Doc. No. 42, at 7). IPT did not receive full payment for its work and filed a lien under the Louisiana Private Works Act lien (PWA). (*Id.* at 7). SLE filed for bankruptcy and its plant was sold through auction. (09-1119, Rec. Doc. No. 591, at 4). Separately, Whitney National Bank and ENGlobal entered into a settlement agreement regarding the money owed to them by SLE, and under the settlement agreement ENGlobal agreed to satisfy any claims of IPT. (*Id.* at 3, 5).

---

[1] We are grateful for the work on this case by Kristen Russo, a Loyola Law School extern with our Chambers.

II. Procedural History

The instant case was originally filed by ENGlobal on February 29, 2012, appealing the judgment of the Bankruptcy Court granting IPT's Motion of Partial Summary Judgment (09-1119, Adv. R. Doc. 528) and the order granting in part and denying in part IPT's Motion to Distribute Funds (09-12676, Rec. Doc. No. 636). (13-4693, Rec. Doc. No. 1-2, at 1). This Court remanded to the Bankruptcy Court (Rec. Doc. No. 28) for the Bankruptcy Court to clarify contradictory rulings concerning the validity of IPT's Louisiana PWA lien. (Rec. Doc. No. 29, at 2).

The remand order by the this Court (Rec. Doc. No. 28) to the Bankruptcy Court sought clarification as to the validity of IPT's Louisiana PWA lien. (*Id.*). On remand, a status conference was held by the Bankruptcy Court on April 8, 2013, during which the court heard short arguments from each side. (*Id.*). The court stated it would render its ruling without any briefs by the parties. (*Id.*). The Bankruptcy Court entered its Amended Order (09, 1119, Adv. R. Doc. 629) and Memorandum Opinion (09-1119, Adv. R. Doc. 630) on April 26, 2013, to clarify its ruling in accordance with this Court's remand order. (*Id.*).

In its Memorandum Opinion (Adv. R. Doc 603), the Bankruptcy Court "found that any PWA claimant performing general contracting service while unlicensed could not possess a valid PWA lien." (Adv. R. Doc. 630, at 4). However, the Bankruptcy Court "also found that

any PWA claimant that acquired a license while performing general contracting services could hold a valid PWA lien to secure the amounts owed for work performed after the license was acquired." (*Id.*). IPT was initially an unlicensed contractor when it started working at the SLE facility, but on January 25, 2007, IPT obtained a valid contractor's license. (*Id.*). Therefore, the Bankruptcy Court found that any money owed to IPT for work performed prior to January 25, 2007, was not secured by the PWA lien, but any money owed to IPT for work performed on or after January 25, 2007, was secured. (*Id.*).

The Bankruptcy Court then heard and granted IPT's Motion for Summary Judgment finding that ENGlobal could not challenge the motion because it was res judicata. (*Id.*). IPT filed a Motion for Distribution and all parties stipulated that IPT's claim was only for money owed after January 25, 2007. (*Id.*). The Bankruptcy Court awarded IPT a total of $811,672.16, which included amounts due for IPT's full judgment owed, pre and post-judgment interest, and state and federal court costs. (*Id.* at 4-5).

**Law and Analysis**

**A. Standard of Review**

"A bankruptcy court's findings of fact are subject to clearly erroneous review, while its conclusions of law are reviewed de novo." *In re Pro-Snax Distributors, Inc. V. Family Snacks, Inc.*, 157 F.3d 414, 420 (5th Cir. 1998).

**B. Contracts Entered Into by IPT With J&C Prior to IPT Obtaining Their Contractor's License Renders Those Contracts Invalid.**

Under Louisiana law, it is "unlawful for any person to engage or to continue in this state in the business of contracting, or to act as a contractor . . . unless he holds an active license . . . ." La. Rev. Stat. Ann. § 37:2160 (2009). A contract that is entered into with an unlicensed contractor is null and void. *Tradewinds Environmental Restoration, Inc., v. St. Tammany Park*, LLC, 578 F.3d 255, 259 (5th Cir. 2009). IPT entered into contracts with J&C on January 8, 2007. (13-4693, Rec. Doc. No. 3, at 7). IPT became a licensed contractor in Louisiana on January 25, 2007. (09-1119, Rec. Doc. No. 630, at 4). IPT was not licensed when it entered into the contracts with J&C. Therefore, any contracts entered into by IPT with J&C prior to January 25, 2007, are null and void.

**C. Work Performed by IPT After Obtaining Their Contractor's License Were not Separate Individual Contracts From Their Original Contract with J&C.**

Under Louisiana law, courts "must enforce the contract to ratify the intent of the parties." *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 484 (5th Cir. 1984)(citing *Acree v. Shell Oil Co.*, 548 F.Supp. 1150, 1153 (M.D. La. 1982); *Smith v. Moncrief*, 421 So.2d 1127, 1131 (La. Ct. App. 1982)). Courts look to the language of the contract to determine the intent of the parties involved, "as long as the words are clear, explicit and lead to no absurd consequences." *Domed Stadium Hotel, Inc.,* 732 F.2d at 484

(citing *Maloney v. Oak Builders, Inc.*, 235 So.2d 386 (La. 1970)). The language of a contract should be viewed and interpreted under its plain meaning. *Id.*(citing *Lambert v. Md. Casualty Co.*, 418 So.2d 553 (La. 1982)). According to Louisiana law, "[a]n obligation is divisible when the object of the performance is susceptible of division," and "[a]n obligation is indivisible when the object of the performance because of the intent of the parties, is not susceptible of division." La. Civ. Code Ann. art. 1815 (2012).

The contracts that are the subject of IPT's PWA lien were entered into on January 8, 2007, between IPT and J&C. (13-4693, Rec. Doc. No. 3, at 7). Those contracts state they were "subject to any and all change orders and/or any agreement(s) entered into by and between said parties which increase and/or decrease the amount of said contract." (13-4693, Rec. Doc. No. 3, at 7). The Bankruptcy Court allowed for IPT to collect money for any work they performed on or after they obtained their contractor's license on January 25, 2007, even though the work performed was the result of change orders to the January 8, 2007, contracts. (09-1119, Adv. R. Doc. 630, at 4). The January 8, 2007, contracts clearly stated they were subject to change orders. (13-4693, Rec. Doc. No. 3, at 7). If J&C and IPT had intended for any change orders to be viewed as separate contracts apart from the original contracts, the language of the contracts would have explicitly stated such intention. (*Id.*).

J&C and IPT's contracts dealt with the "removal and disposal

of equipment incapable of restoration" from the SLE plant. (*Id.* at 9). The work performed by IPT subject to the change orders also related to the removal of equipment from the SLE plant. (*Id.*). The removal of only some of the equipment by IPT would not have fulfilled the end sought by J&C in its contracts with IPT. (*Id.*). In the Bankruptcy Court's order (09-1119, Adv. R. Doc 537), the court acknowledges that the change orders entered into by IPT and J&C after January 25, 2007, related to the job numbers of the original contracts entered into on January 8, 2007. (Rec. Doc. No. 42, at 12). Therefore, any work performed after IPT obtained their contractor's license on January 25, 2007, was pursuant to the invalid, null and void contracts entered into on January 8, 2007.

**D. IPT's PWA Lien is Invalid.**

Under the PWA, subcontractors "have a claim against the owner and a claim against the contractor to secure payment" for work performed under their contract. La. Rev. Stat. Ann. § 9:4802(A)(1). "A subcontractor is one who by contract made directly with a contractor, or by a contract that is one of a series of contracts emanating from a contractor, is bound to perform all or part of a work contracted for by the contractor." La. Rev. Stat. Ann. § 9:4807(C).

In *LaCote, LLC v. Global Golf Constr.*, a Louisiana district court found that a lawfully licensed subcontractor could collect on a PWA lien. 2009 WL 3763912 at *4 (E.D. La. Nov. 9, 2009). The

7

dispute in *LaCote* arose because the general contractor whom the subcontractor contracted with was an unlicensed contractor. *Id.* at *2-3. The owner of the property in *LaCote* was seeking to recover money paid to the subcontractor after the subcontractor threatened to file a lien against the owner. *Id.* at *1. The owner argued because the general contractor was unlicensed the subcontractor's contract with the general contractor was invalid, therefore the subcontractor could not recover under the PWA. *Id.* at *2. The court disagreed and reasoned that the contract was not void due to the lack of the general contractor's license because the court was not willing to hold the lawfully licensed subcontractor responsible for the unlicensed general contractor's act. *Id.* at *3. Therefore, the court found that because the subcontractor's contract was "not a nullity" and "the PWA limit[s] its application to lawfully licensed contractors," the subcontractor had a validly enforceable PWA lien. *Id.* at *4.

Unlike the facts in LaCote, IPT was an unlicensed subcontractor when it entered into the agreement with J&C. For that reason, IPT's contracts with J&C were null and void from the start. The work performed by IPT after obtaining their contractor's license was only done pursuant to the invalid contracts. Therefore, ENGlobal is not responsible for IPT's PWA lien.

However, this does not mean that IPT is entitled to no relief. Under Louisiana law, an unlicensed contractor that performed work

under an invalid contract is entitled to receive the "actual cost of materials, services and labor." *Tradewinds*, 578 F.3d at 260 (quoting *Alonzo v. Chifici*, 526 So.2d 237, 243 (5th Cir. 1988)). Accordingly, ENGlobal is responsible to IPT for the actual cost of materials, services and labor IPT provided on the SLE project.

**E. ENGlobal did not Waive its Right to Appeal the Validity of IPT's Lien.**

IPT claims the waiver doctrine applies in this situation. "[T]he waiver doctrine . . . holds that an issue that could have been but was not raised on appeal is forfeited and may not be revisited . . . ." *Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011). "The waiver doctrine . . . 'serves judicial economy by forcing parties to raise issues whose resolution might spare the court and parties later rounds of remands and appeals.' " *Id.* (quoting *United States v. Castillo*, 179 F.3d 321, 326 (5th Cir. 1999)).

An appellate court does have the discretion to "reach an otherwise waived issue logically 'antecedent to and ultimately dispositive of the dispute before it. . .' " *Crocker v. Piednomt Aviation, Inc.*, 49 F.3d 735, 740 (D.C. Cir. 1995) (quoting *United States Nat'l Bank of Or. v. Indep. Ins. Agents of America*, 113 S.Ct. 2173, 2178 (1993)). However, such "discretion to waive a waiver is normally exercised only in 'exceptional circumstances, where injustice might otherwise result.' " *Id.* (quoting *Eli Lilly & Co. v. Home Ins. Co.*, 794 F.2d 710, 717 (D.C. Cir. 1986)).

In *Medical Center Pharmacy*, the FDA originally appealed "only the district court's ruling on the new-drug issue," and did not address the district court's finding that the FDA could not inspect the pharmacies records. 634 F.3d at 833. The Fifth Circuit agreed with the FDA on appeal and remanded the case back to the district court. *Id.* On remand, the FDA argued and the district court agreed that the Fifth Circuit's opinion allowed limited inspection of the pharmacies by the FDA. *Id.* The pharmacies appealed the district court's ruling arguing the FDA had waived the inspection issue because it did not bring it in the original appeal, and the district court should not have reopened that issue on remand. *Id.* at 832. The Fifth Circuit found that because the FDA had not objected to the inspection issue in it's original appeal of the district court's ruling, the FDA could not now raise the issue on remand. *Id.* at 836. Therefore, the FDA forfeited the issue. *Id.*

Similarly, in *Brooks v. United States*, the Fifth Circuit found that the government was barred from raising an issue on a second appeal that could have been raised during its first appeal. 757 F.2d 734, 737 (5th Cir. 1985). The court stated that "an issue not briefed and discussed in an appeal before this Court may be deemed to have been waived." *Id.* at 739. The district court judge there had found that both the FAA and Brooks were negligent for an airplane crash. *Id.* at 737. On a previous appeal, the Fifth Circuit affirmed the lower court's findings of negligence and "remanded the

10

case to the district court . . . to reapportion the comparative negligence of the parties." *Id.* The government then appealed the district court's finding on the apportionment of fault and raised the issue of proximate cause arguing the government was not liable because of Brook's superseding negligence. *Id.* at 737, 739. The Fifth Circuit stated that the district court's finding that the "negligence of the FAA employees proximately cause[d] the accident was entered prior to the first the appeal" and the government failed to raise the issue during its first appeal. *Id.* at 739. Therefore, the court found that the government waived its right to raise the issue of proximate cause on its second appeal. *Id.*

This case is distinguishable from *Medical Center Pharmacy* because ENGlobal did raise the validity issue of IPT's lien in their original brief (Rec. Doc. No. 4, at 37). ENGlobal raised the validity issue in arguing that the Bankruptcy Court erred in finding that ENGlobal's challenges to the validity of IPT's lien were barred by res judicata. (*Id.*). Also, this case is distinguishable from *Brooks* because this Court never affirmed any part of the Bankruptcy Court's Original Order (Adv. R. Doc. 537) when it remanded. ENGlobal is not seeking to raise a new issue, but rather they are making a subsequent argument in regards to an issue that had been previously raised. The remand order sought clarification and recognized that the Bankruptcy Court "did not offer an analysis" in its decision. (Rec. Doc. No. 28, at 8). The

11

detailed validity argument ENGlobal raised in their Motion to Re-Instate appeal was not one that could have been made until the Bankruptcy Court provided clear and non-conflicting reasons in its Amended Order (Adv. R. Doc. 629).

Thus, ENGlobal is entitled to challenge the Amended Order (Adv. R. Doc. 629) of the Bankruptcy Court. In concluding that the Bankruptcy Court erred in finding IPT's lien valid, the second issue raised by ENGlobal concerning whether the Bankruptcy Court erred in denying their Motion to Strike IPT's Motion for Summary Judgement based on the Bankruptcy Court's Order is moot.

Accordingly, for the reason articulated above, **IT IS ORDERED** the Bankruptcy Court's Opinion be **REVERSED** and the matter **REMANDED** for further proceedings consistent with this opinion.

New Orleans, Louisiana, this 18th day of February, 2014.

_____
UNITED STATES DISTRICT JUDGE